UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**CHARMAINE SAUNDERS**, an Individual;
Plaintiff,

v.                                                                    **Case No.: 8:22CV 2542 CEH-JSS**

**BREIT MF PRESERVE AT LAKELAND, LLC**
**BH MANAGEMENT SERVICES, LLC.,**
Defendants.
_____/

## PLAINTIFF'S AMENDED COMPLAINT

COMES NOW, Plaintiff, CHARMAINE SAUNDERS, ("Plaintiff"), in the above-styled civil action and brings this Amended Complaint against the above-named Defendants, **BREIT MF PRESERVE AT LAKELAND, LLC and BH MANAGEMENT SERVICES, LLC,** corporate entities duly incorporated under the laws in the state of Florida ("Defendants") and in support hereof, alleges as follows:

## PARTIES AND JURISDICTION

1. Plaintiff, **CHARMAINE SAUNDERS**, ("Plaintiff"), at all times material hereto, is domiciled in the state of Florida and is a natural person residing in Highlands County, in the State of Florida. At the time of the incident the basis of this lawsuit, Plaintiff was a resident at **"The Preserve at Lakeland Hills"** 705 Central Parker Cir Apt 206 Lakeland, FL 33805 and is subject to the jurisdiction of this Court. Both the Plaintiff (Saunders) and Defendants (Breit MF Preserve and BH Management Services) are citizens of

Plaintiff has been and is domiciled in the State of Florida, under the jurisdiction of this court and Defendants domiciled in Illinois and Iowa respectively.

2. Defendants herein **BREIT MF PRESERVE AT LAKELAND, LLC and BH MANAGEMENT SERVICES, LLC.** ("Defendants") representatives of *The Preserve at Lakeland Hills,* is, and at all times material hereto, citizens of states other than the state of Florida. More Specifically, Breit MF Preserve's is domiciled in the state of Illinois with a principal place of business is 233 S. Wacker Drive, Suite 4700 Chicago, IL 60606 and BH Management Services is domiciled in Iowa with a principal place of business at 400 Locust St STE 790 Des Moines, Iowa 50309 respectively.

3. The Middle District has diversity jurisdiction over this lawsuit which involves a civil action to redress the deprivation of the rights, and privileges of Plaintiff pursuant to provisions enumerated under 28 U.S.C. § 1332 for the reasons of Diversity of Citizenship and that the amount in controversy is over $75,000.00 exclusive of interest and costs and is between citizens of different states.

<u>VENUE</u>

4. Venue is proper pursuant to 28 U.S.C. § 1332 for reasons that the events herein alleged give rise to the claims between citizens of different States. Plaintiff CHARMAINE SAUNDERS is domiciled in the State of Florida and submits a claim of jurisdictional citizenship for the Middle District of Florida Court Tampa Division and Breit MF Preserve is domiciled in the State of Illinois with a principal business address 233 S. Wacker Drive, Suite 4700 Chicago, IL 60606 and BH Management Services is

domiciled in the State of Iowa with a principal business address of 400 Locust St STE

790 Des Moines, Iowa 50309.

5. Furthermore, the amount in controversy is greater than seventy-five thousand dollars

($75,000), not including interests and legal fees.

The citizenship of each member and or principal party for Breit MF Preserve at Lakeland, LLC

and BH Management Services, LLC further supports the Diversity Jurisdiction.

**BREIT MF PRESERVE AT LAKELAND, LLC** Members, and Principals Jurisdictional

citizenships are as follows:

**a. AGARWAL, A.J.** -   Senior Managing Director, Vice President

345 Park Avenue
New York, NY 10154 – Citizenship.

b**. CAPLAN, KENNETH A** - Senior Managing Director, President
345 Park Avenue
New York, NY 10154 - Citizenship

**c. COHEN, FRANK** - Senior Managing Director, Vice President
345 Park Avenue
New York, NY 10154 - Citizenship

**d**. **CUTAIA, GIOVANNI** - Senior Managing Director, Vice President
345 Park Avenue
New York, NY 10154 - Citizenship

**e. HARPER, ROBERT** - Senior Managing Director, Vice President
345 Park Avenue
New York, NY 10154 - Citizenship

**f. HENRITZE, TYLER** - Senior Managing Director, Vice President
345 PARK AVENUE
New York, NY 10154 - Citizenship

**g. BREIT MF B2 INVESTORS LLC** - Member

233 S. Wacker Drive, SUITE 4700
CHICAGO, IL 60606 – Citizenship


**h. MCCARTHY, KATHLEEN** - Senior Managing Director, President
345 Park Avenue
New York, NY 10154 - Citizenship


**i. MEGHJI, NADEEM** - Senior Managing Director, Vice President
345 Park Avenue
New York, NY 10154 - Citizenship


**j. STEIN, WILLIAM J** - Senior Managing Director, Vice President
345 Park Avenue
New York, NY 10154 - Citizenship

**k. LEPATNER, WESLEY** - Senior Managing Director, Vice President
345 Park Avenue
New York, NY 10154 - Citizenship

**l. WERNER, JACOB** - Senior Managing Director, Vice President
345 Park Avenue
New York, NY 10154 - Citizenship

**m. LASCHER, MICHAEL** - Senior Managing Director, Vice President
345 Park Avenue
New York, NY 10154 - Citizenship

**n. LEVINE, DAVID** - Senior Managing Director Vice President
345 Park Avenue
New York, NY 10154 - Citizenship

**o. ARMER, DOUG** - Managing Director, Vice President
345 Park Avenue
New York, NY 10154 - Citizenship

**p. BEOVICH, ANTHONY** - Managing Director, Vice President
New York, NY 10154 - Citizenship

**q. DRASITES, ANDREA** - Managing Director, Vice President
345 Park Avenue
New York, NY 10154 - Citizenship

**r. KIM, BRIAN** - SENIOR Managing Director, Vice President

345 Park Avenue
New York, NY 10154 - Citizenship

**s. MADHANY, QAHIR** - Managing Director, Vice President
345 Park Avenue
New York, NY 10154 - Citizenship

**t. MARONE, ANTHONY F, Jr.** - Managing Director, Vice President
345 Park Avenue
New York, NY 10154 - Citizenship

**u. PIANKO, MELISSA -** Managing Director, Vice President
345 Park Avenue
New York, NY 10154 - Citizenship

**v. QUINLAN, PAUL** - Senior Managing Director, Vice President
345 Park Avenue
New York, NY 10154 - Citizenship

**w. SPROGIS, KAREN** - Managing Director,
345 Park Avenue
New York, NY 10154 - Citizenship

**x. WIEBOLT, MICHAEL** - Senior Managing Director, Vice President
345 Park Avenue
New York, NY 10154 - Citizenship

**y. VOLCHYOK, LEON** - Managing Director, Vice President
345 PARK AVENUE
New York, NY 10154 - Citizenship

**z. INGLE, RYAN -** Managing Director, Vice President
345 Park Avenue
New York, NY 10154 - Citizenship

**aa. CARSON, JOSHUA** - Managing Director, Vice President
345 Park Avenue
New York, NY 10154 - Citizenship

**bb. WU, ERIC** - Managing Director, Vice President
345 Park Avenue
New York, NY 10154 - Citizenship

PLAINTIFF'S AMENDED CIVIL COMPLAINT                                          5

**cc. PRETE, JOHN** - Managing Director, Vice President
345 Park Avenue
New York, NY 10154 - Citizenship

**dd. ZACKOWITZ, DAVID** - Managing Director, Vice President
345 PARK AVENUE
New York, NY 10154 - Citizenship

**ee. HAMID, ASIM** - Senior Managing Director, Vice President
345
New York, NY 10154 - Citizenship

**ff. LIN, BRIAN** - Managing Director, Vice President
345 Park Avenue
New York, NY 10154 - Citizenship

**gg. GRIMALDI, NICOLE** - Chief Accounting Officer
233 S. Wacker Drive, SUITE 4700
Chicago, IL 60606 - Citizenship

**hh. BERINGER, MICHAEL** - Vice President - accounting
233 S. Wacker Drive, Suite 4700
Chicago, IL 60606 Citizenship

**ii. LENIHAN, MARC** - Senior Director - TREASURY
233 S. Wacker Drive, SUITE 4700
Chicago, IL 60606 - Citizenship

**jj. KLANK, MARIKAY** - Vice President - TAX
233 S. Wacker Drive, SUITE 4700
Chicago, IL 60606 - Citizenship

**BH Management Services, LLC** Members and Principals citizenships are as follows:

**a.  JOANNA ZABRISKE** - President and Chief Executive Officer

1875 Meadow Ridge Drive

Dexter, MI 48130 - Citizenship

**b.  HARRY BOOKEY** – Founder

11 SW 51st Street

Des Moines, Iowa – Citizenship

**c.  MIKE BAKER** – Vice President BH Equities

Chicago, Illinois - Citizenship

**d.  PHYLISS JONES** – Chief Financial Officer

Des Moines, Iowa - Citizenship

**e. JENNIFER DAVIS** – Managing Director, Asset Management

Des Moines, Iowa - Citizenship

**f. DUSTY THOMAS** – Managing Director Capital Markets and Investor Relations

West Des Moines, Iowa - Citizenship

**g. MELODY KING** – Vice President Property Operations

Dallas, TX - Citizenship

**h. LUKE PASKERT** – Vice President IT

Ankey, Iowa - Citizenship

**i. TRAVIS SHEETS** – Vice President and General Counsel

Clive, Iowa - Citizenship

**j. KELLY KUTACH** – Vice President Marketing

Dallas, TX - Citizenship

**k**. CHRISTI WEINSTEIN - Vice President Strategic Support Solutions

Des Moines, Iowa - Citizenship

**l. BRANDY DANIEL** – Vice president Business Performance

Dallas, TX - Citizenship

**m**. **CHARLOTTE FLORES** – Vice President Human Resources

Dallas, TX - Citizenship

**n**. **MELODY KING** – Vice President Property Operations

Dallas, TX - Citizenship

## STATEMENT OF FACTS
*(Allegations Common to All Causes of Action)*
*(As to all Defendants)*

6.  Defendant BREIT MF PRESERVE at LAKELAND, LLC is the investment
    stakeholder/ownership and BH MANAGEMENT SERVICES, LLC is the property
    management company of the apartment complex named The Preserve at Lakeland Hills

("Preserve"), which is located at 4920 FL-33 Lakeland, FL 33805. Plaintiff resided at The Preserve at Lakeland Hills from on or about January 24, 2020, to on or about January 24, 2022, when she leased an apartment there at 705 Central Parke Cir Apt 206 Lakeland, Florida 33805 until the expiration of the lease.

7.  One of the main reasons Plaintiff moved to Preserve at Lakeland Hills was the Defendants advertised security surveillance and electronic gate system and sold the community as a "gated community".

8.  The Preserve portrayed the Plaintiff and posted signs to back up the advertisement and claims as being a secure, gated community, with 24-hour functioning surveillance cameras, and security patrol. Nevertheless, while residing at The Preserve, Plaintiff was assaulted, raped, and sodomized within the purported safety of her gated community.

9.  Consequently, after law enforcement went to request the surveillance footage as Plaintiff had instructed them to do after the violent sexual assault only to be told by law enforcement there was no footage or patrol of a security guard on the night of July 27, 2021.

10. It was then Plaintiff learned that the Defendants did not have functioning cameras, or any surveillance cameras at all, and no security patrol contrary to what Plaintiff was told when shopping for a rental unit.

11. Moreover, also while residing at The Preserve, Plaintiff's apartment was repeatedly burglarized by the Defendants employees and vendors of the Defendants.

12. Plaintiff installed an alarm and provided the Defendants with a secondary maintenance code to use in the event of a building emergency, as Plaintiff requested work orders or service only to be performed when Plaintiff is physically present.

PLAINTIFF'S AMENDED CIVIL COMPLAINT                                                    9

13. Plaintiff alarm was consistently triggered due to illegal entry by staff and non-staff of the Preserve authorized by the Preserve's management.

14. The alarm alerts led to the dispatch of Lakeland Police Department, prompting Lakeland Police Department to advise Plaintiff any additional alarm triggers would be billed to her based on the number of times they had to go out to check the apartment.

15. Plaintiff conveyed this information to the management team of the Preserve and implored them to use the code.

16. Plaintiff again advised Vernetta Rice Assistant Property Manager that there should be no access when Plaintiff is not present the exception only if there is an emergency, and with reasonable notice for inspection of the unit, Plaintiff would make herself available.

17. On or about November 19, 2021 Plaintiff's apartment again was accessed and bulgarized.

18. The Plaintiff's computer was hacked, hard copies of her files relating to the sexual assault was stolen, a hard copy of files relating to the wrongful eviction was stolen, the original copy of the eviction letter and envelope with the post marked date addressed to Plaintiff was stolen.

19. Plaintiffs legally purchased new handgun purposefully damaged.

20. This illegal entry triggered the alarm and Plaintiff called The Preserve Management office who had relocated their office temporarily within close proximity to Plaintiff's apartment.

21. The plaintiff asked for an exterior wellness check of the apartment because of the cellphone notification that the alarm was going off and was told by management her alarm was not going off because their office was close enough to hear.

22. This illegal entry occurred as soon as Plaintiff parked her car at a restaurant for an early dinner and it was on or about one (1) week after Plaintiff advised the Defendants, she would not be renewing her lease.

23. The Defendants called Plaintiff almost forty-five (45) minutes after the first conversation and stated that the alarm in fact was going off because they allowed a vendor to go in to Plaintiff's apartment unit, again not honoring Plaintiffs request but originally denying the alarm trigger.

24. Moreover, The Preserve Management willfully breached the lease agreement with Plaintiff in multiple respects including (i) failing to cure defects which directly impacted Plaintiff's ability to reside at the apartment such as pest control, trash removal, black mold, and proper plumbing; giving rise to habitability see Fl. Stat. § 83.51(ii) attempting as retaliation of Plaintiff's complaints to evict Plaintiff twice after the eviction's moratorium came into effect; both State and Centers for Disease Control (iii) multiple improper and illegal entries into Plaintiff's apartment without prior notice and by unauthorized personnel of damages for the following grounds; (iiii) unconscionable calculated and schemed to influence the judicial process in the Court in Polk County Florida preventing the court to impartially adjudicate the falsified eviction pleading against the Plaintiff

## CAUSES OF ACTION

*(As to all defendants, all Counts are directly alleged to BREIT MF PRESERVE AT LAKELAND, LLC., BH MANAGEMENT SERVICES, LLC.)*

**COUNT ONE**

*(As to all Defendants)*

**Breach of Contract**

25. A breach of contract in Florida is well settled in law and as such the elements to be established are; 1) a valid contract; 2) a material breach of the contract; and 3) damages. *Murciano v. Garcia,*958 So.2d 423, 423 (Fla. 3d DCA 2007) ; *Abbott Labs., Inc. v. Gen. Elec. Capital,*765 So.2d 737, 740 (Fla. 5th DCA 2000). Moreover, to establish a material breach, the party alleged to have breached the contract must have failed to perform a duty that goes to the essence of the contract and is of such significance that it relieves the injured party from further performance of its contractual duties. *Covelli Family, L.P. v. ABG5, L.L.C.*, 977 So.2d 749, 752 (Fla. 4th DCA 2008) ; *Sublime, Inc. v. Boardman's Inc.,* 849 So.2d 470, 471 (Fla. 4th DCA 2003) ; see also *Thomas v. Fusilier*, 966 So.2d 1001, 1003 (Fla. 5th DCA 2007). (Citing *Burlington & Rockenbach, P.A. v. Law Offices of E. Clay Parker*, 160 So. 3d 955, 960 (Fla. Dist. Ct. App. 2015)).

26. There is no requirement that the breach be material for the other party to recover damages. As the Restatement (Second) Contracts explains: "Every breach gives rise to a claim for damages," Restatement (Second) Contracts §236, comment a., and "[a] determination that a failure is not material means only that it does not have the effect of" excusing the future performance of the other party to the contract.

27. Plaintiff and defendants executed a contract, and defendants breached that contract to the effect they did not perform services to prevent infestation of the roaches, nor provide the security related MEASURES as per the verbal contract. As a result, the plaintiff

was harmed and injured in the failure to perform.

28. The elements of a breach of contract require;

      1.     Plaintiff and defendant entered a valid contract;

      2.     Defendant committed a breach of the contract; and

      3.     Plaintiff suffered damages caused by defendant's breach.

29. Here, the Defendants, on numerous occasions, based upon the multiple breaches violated the residential lease agreement between the parties, illegal entries, failure to cure defects directly related to habitability and the landlord's obligation under state law Fl. Stat. § 83.51.

30. Additionally, Defendants failed to cure multiple requests for maintenance issues, a contractual landlord duty.

31. Plaintiff was subjected to an infestation of roaches which were found in the bed and caused injury to plaintiff in rashes, and they were present in the bathtub, and kitchen in direct violation of § 83.51 of the Florida Statutes.[1]

32. Plaintiff complained of black mold in the dining room area and bathrooms, broken blinds, black engine oil around the front door and outside patio, Defendants failed to take action to cure and remediate an unhealthy living environment.

33. Plaintiff gave notice of complaints to defendants of non-operational ceiling fans, trash in the hallways, and overfilled trash dumpsters in the front and back of the community on a regular basis. Plaintiff work orders were ignored, and maintenance personnel said

---

[1] (2)(a)  Unless otherwise agreed in writing, in addition to the requirements of subsection (1), the landlord of a dwelling unit other than a single-family home or duplex shall, at all times during the tenancy, make reasonable provisions for: 1.  The extermination of rats, mice, roaches, ants, wood-destroying organisms, and bedbugs. When vacation of the premises is required for such extermination, the landlord is not liable for damages but shall abate the rent. The tenant must temporarily vacate the premises for a period of time not to exceed 4 days, on 7 days' written notice, if necessary, for extermination pursuant to this subparagraph.

to buy bleach and use it on the mold by maintenance.

    **a.** Defendants further breached the contract with Plaintiff by billing Plaintiff for the pest and trash services monthly but not providing the service to uphold their duty to cure.

### COUNT TWO
*Unlawful Eviction Pursuant to FL 83.44, 83.64, 83.67 of the Florida Statute Landlord and Tenant Statues*
*(As to all defendants)*

34. That Defendant's filing of an erroneous retaliatory eviction due to Plaintiffs complaints to The Preserve corporate office, falsified information to obtain court ruling for an eviction order, this act violates multiple statues under the Landlord and Tenant bill 83.44, 83.64, 83.67

35. Furthermore, the Defendants did not follow the Governor's moratorium and the Centers for Disease Control ("CDC") for non-eviction moratorium due to the Covid-19 Pandemic even if the eviction was legitimate, this failure to heed enjoined to the wrongful eviction filing.

36. On February 28, 2020, Defendants e-filed an eviction summons without proper notice to Plaintiff despite Plaintiff going into the office a total of seven (7) different times in the month of February including on the morning of February 28, 2020, and speaking to assistant property manager Vernetta Rice and Sean R. in the presence of other employees to make a payment on the correct balance, as Plaintiff was heading out of state and advised The Preserve Management.

37. Defendants never once advised Plaintiff of the eviction filing.

38. Defendant stated *ONLY* the Property manager Jazmin Cepeda ("Cepeda") was allowed

to provide Plaintiff the amount to pay and that Cepeda was not available; Moreover, upon information and belief the manager discriminatorily preferred eviction to the payment.

39. Assistant manager refused the payment at that point, the landlord did claim plaintiff never paid as a pretext to eviction.

40. Assistant manager then and there did aid Cepeda in breaching the contract and forcing an eviction proceeding by refusal to take payment.

41. Plaintiff advised Defendants due to upcoming travel, a blank check would be left with a personal friend and to call Plaintiff with the amount to pay for February 2020 rent which was Plaintiff's first month at The Preserve; That same month for which the Defendants filed the undisclosed eviction on plaintiff.

42. Subsequently, and on more than one occasion Plaintiff was locked out of the online rent paying portal for The Preserve.

43. Plaintiff reported it to the Assistant Manager of The Preserve. When Plaintiff was able to reset the password an arbitration agreement for legal disputes came up on the page that Plaintiff was unable to by-pass.

44. Plaintiff again reached out to Assistant Manager Vernetta Rice and Plaintiff advised Assistant Manager she would not sign any arbitration agreements and Plaintiff started paying her rent via check payment to the front office until the issue with portal was resolved.

   *a.* Defendants engaged in "Discrimination" under *FL Landlord and Tenant Statue 83.64 (4)* by treating Plaintiff differently by either the rent charged, the services rendered, or the action being taken by the landlord, which shall be a prerequisite to a finding of retaliatory conduct.

## COUNT THREE

*Breach of Implied Warranty of Habitability*
*Pursuant to § 83.51-60 of the Florida Statute*
*(As to all defendants)*


45. The law requires landlords to meet and maintain certain housing standards when renting

    out property under § 83.51-60 of the Florida Statute

46. By demanding Plaintiff accept an apartment different from what was promised, and which

    was dirty, roach infested, had black mold, damaged, leaking sinks, overflowing toilets at

    the time of move-in and unsuitable for living. After Plaintiff had given up her previous

    residence. Plaintiff had to find alternate living arrangements at her expense while waiting

    for the apartment to be cleaned. One (1) week later apartment was not cleaned and Plaintiff

    not having any place to live cleaned it and moved in.

## COUNT FOUR

*(False Advertising Pursuant to § 817.41(1) of the Florida Statute)*
*(As to all defendants)*


47. That under *§ 817.41(1) of the Florida Statute* shall be unlawful for any person to make or

    disseminate or cause to be made or disseminated before the general public of the state, or

    any portion thereof, any misleading advertisement. Such making or dissemination of

    misleading advertising shall constitute and is hereby declared to be fraudulent and

    unlawful, designed and intended for obtaining money or property under false pretenses.

    Defendants advertised in December 2019 and January 2020 one (1) and three (3) bedrooms

    $250.00 off and two (2) bedrooms $500.00 off first month's rent. Plaintiff rented a two

    bedroom and presented advertisement reflective of the promotion of $500.00 off first

month, credit for the first week Plaintiff could not move in, credit for Plaintiff purchasing cleaning supplies and cleaning the apartment unit to be able to move in.

48. Additionally, Defendants did also offer for rent apartments under false presences and based on willful misrepresentations because Defendant was perfectly aware that the apartment complex was not fully gated, none of the security systems in the apartment complex were in working order or did not exist, and that there was not nightly security patrol as Defendants stated when  Plaintiff inquired about renting a unit on the property and Plaintiff cited safety and security was top priority based on previous experiences.

**COUNT FIVE**
*(Invasion of Privacy and Unlawful Intrusion)*
*(As to all defendants)*

49. As to the repeated willful invasion of privacy for illegal entries into Plaintiff's apartment without prior notice and by unauthorized personnel, vendors and staff, as well as by the theft of private files, review of electronic devices, removal of password booklets and unauthorized access to Plaintiff's computer is an invasion of Plaintiff's right to privacy causing Plaintiff mental anguish.

50. An unknown man was observed in Plaintiff's apartment while Plaintiff was at work on more than one occasion this occurred, and each incident was reported to management. Defendant violated state law by entering without notice to Plaintiff absent of an emergency. On one of the unauthorized occasions, on or about June 2021 a maintenance man put a key in Plaintiff's front door and unlocked it.

51.  Plaintiff was at home, but her car was not on the premise, giving the appearance that she was not home, there was no work order or emergency to warrant that illegal entry.

52. Plaintiff ran to the door and shut it closed. Plaintiff immediately called the front office and reported the incident. Plaintiff was told it was an honest mistake by The Preserve Management, this action outlined in 51, 52 and 53 caused Plaintiff mental anguish,

## COUNT SIX
*(Conversion Pursuant to § 772.11 of the Florida Statute)*
*(As to all defendants)*

53. Defendants unauthorized entry into Plaintiff's apartment on November 19th, 2021 and unauthorized removal of evidentiary paperwork in an ongoing criminal investigation, removal of flash drives, relating to Plaintiff's violent sexual assault on Defendants property constitutes civil theft, for the purposes of impeding a criminal investigation and to limit potential civil liability of the Defendants; harmed Plaintiff and impeded Plaintiff's pursuit of justice in a criminal case. This conversion while directly not holding to monetary value was a criminal act potentially with financial benefits to the defendants should a civil suit be sought as is the basis of this law suit.

54. Here, the law entitles the Plaintiff to an award of actual and treble damages plus reasonable legal fees. Plaintiff in writing, notified the Regional Manager Stephanie Wells that Preserve Management stole items from Plaintiff's residence at 705 Central Parke Cir Apt 206 Lakeland, Florida.

## COUNT SEVEN
*(False Advertising Pursuant to The Florida Deceptive and Unfair Trade Practices Act (FDUTPA), or Florida Statute § 501.201, Florida Statue s. 817.40(5)*

*(As to all defendants)*

55. Defendants by the mere offering for rent apartments under misleading advertising and false presence that advertised a discounted first month's rental promotion, that

subsequently was not applied and without intent to apply constitutes a violation of the FDUTPA and Florida Statue s. 817.40 (5)

    **a.**   to include misleading advertising in any statements made, disseminated, in oral, written, electronic, or printed form otherwise to or before the public,  or any portion thereof, which are known, or through the exercise of reasonable care or investigation could or might have been ascertained, to be untrue or misleading, and which are or were so made or disseminated with the intent or purpose, either directly or indirectly, of selling or disposing of real or personal property, services of any nature whatever, professional or otherwise, or to induce the public to enter into any obligation relating to such property or services.

56. The defendants advertise renting a two-bedroom apartment that purported to be $500.00 off first month's rent, with Plaintiff producing a copy of the promotion, then upon signing of lease did not reduce the first month's rental rate by $500.00.

57. Plaintiff executed the lease and defendants acknowledged promotion that same day the promotional rate decreasing the first month's rent by $500.00. Plaintiff verified the promotion on Defendants website. Defendant did not honor the $500.00 off the first month and used that as the basis for the first eviction.

58. Based upon the advertising of promotional rental rate defendants knowingly advertised a certain promotional rate that was falsely stated or was intentional misrepresented to entice the rental leases in a deceptive and fraudulent manner, which harmed the Plaintiff by monetary means, continued disruption of habitability, causing psychological and emotional injury. The law entitles Plaintiff to recover legal fees and punitive damages.

## COUNT EIGHT
*(Negligent Infliction of Emotional Distress)*
*(As to all defendants)*

59. To state a cause of action for intentional infliction of emotional distress, Plaintiff's complaint herein alleges all four elements: (1) deliberate or reckless infliction of mental suffering; (2) outrageous conduct; (3) the conduct caused the emotional distress; and (4) the distress was severe.

60. Defendant visited the management office a minimum of six (6) separate occasions and called numerous times to get the correct amount to pay for February 2020 rent. The Preserve's Management willfully avoided Plaintiff, withheld advising Plaintiff the correct amount to pay on the rent. This failure of duty led to the embarrassment and time away from Plaintiff's work due to the wrongful eviction filing, caused Plaintiff to have to leave work each month and drive forty (40) minutes each way to pay rent and court fees at the county courthouse in Bartow Florida. Representatives from Defendants' corporate office repeatedly called Plaintiff approximately five (5) months after the first eviction filing despite Plaintiff being current on the rent and threatened eviction again.

61. Florida law provides an intentional infliction of severe emotional distress cause of action where a company abuses its power, position of trust, or fiduciary duty for financial gain by causing fear and emotional distress in others. As in *Miller v. Mutual of Omaha Ins. Co.,* 235 So. 2d 33 (Fla. 1st DCA 1970). The eviction filed by the Defendants was posted on the World Wide Web, embarrassing Plaintiff, tarnishing Plaintiff's name and reputation, as Plaintiff was an active member in the Lakeland community.

62. That the failure to perform its duty to protect Plaintiff as a resident of The Preserve and being a contributing factor in Plaintiff's violent sexual assault as well as in the police's

failure to apprehend/charge the suspect. Plaintiff's original apartment was at the front
of the community and not at the back where the Defendants placed her the day of move
in caused undue emotional, and mental stress.

63. Moreover, defendants caused Plaintiff emotional distress based upon the fraudulent
claims and evictions, also on the misrepresentations of the reduced rental rate for first
month, and infliction of harm that was caused based upon the direct and proximate
actions of the defendants.

## COUNT NINE
*(Negligent Security Pursuant to § 812.173 of the Florida Statute)*
*(As to all defendants)*

64. Defendant is negligent for failure to meet the standards of providing security as
contractually stated. Defendant should be able to anticipate and take steps to prevent
criminal activity on their property which is foreseeable. Defendants advertised to Plaintiff
24- hour surveillance cameras and night time security patrol at the time of signing the
rental agreement. In *McCain v. Florida Power Corp.*, 593 So. 2d 500 (Fla.1992) "The
issue of foreseeability as it pertains to proximate cause may be decided as a matter of law,
but only" after the event and looking back from the harm to the actor's negligent conduct"
See *McCain*, 593 So. 2d at 504 (quoting Restatement (Second) of Torts, § 435(2) (1965)).

65. Defendant by offering for rent apartments under false presences and based on willful
misrepresentations because Defendant was perfectly aware that none of the security
systems in the apartment complex were in working order, nor did such system exist as
advertised on day of lease signing breached and confirmed by the Lakeland Police
department was negligent. Plaintiff was approved for another apartment complex but

chose the Preserved based on the advertised security, as a result Plaintiff suffered actual damages.

66. Defendant breached the negligent security by failure to uphold its duty to protect using security devises in adequate and working order and security measures were not in place, (the electric gates were not in working condition and cameras work not operational) despite being conspicuously posted that the security measures existed. Defendant misrepresented its security. The electric gate at the rear of the apartment complex was inoperable for months and poor lighting around the back of the community where Plaintiff lived, was in effect at the time of the violent attack against Plaintiff on the night of July 27th, 2021.

67. Defendants chained the rear gate closed after Plaintiff's violent sexual assault, rape and sodomy which was broken and open the night of July 27th, 2021, the night of the violent sexual assault at the Preserve at Lakeland Hills. Defendants removed all signage from around the apartment complex that advertised 24-hour surveillance and security patrol after Plaintiff instructed Lakeland Police Officers to get the footage of the night of July 27th, 2021.This removal of the posted signs was done on August 5th, 2021.

68. Plaintiff was harmed as a result of the defendant's duty to care and duty to protect and as a result was physically, emotionally, and psychologically injured by criminal action that could have been foreseen, deterred and overall prevented if proper security measures that Defendants claimed were in place. Defendants' actions to impede a criminal investigation of Plaintiff's sexual assault was self-beneficial and in violation of Florida Statue 918.13, hence the removal of all security surveillance and security patrol signage.

69. On July 27, 2021, Plaintiff was violently assaulted, raped and sodomized at the

Defendants establishment, The Preserve at Lakeland Hills. Lakeland Police Department informed the Defendants about the incident. Defendants did not reach out to Plaintiff, nor did the Defendants take any additional security measures. Subsequent to the brutal attack on Plaintiff, Plaintiff was stalked, harassed, followed on Defendants property and Plaintiff reported it to the management at the Preserve at Lakeland Hills. The Defendants did not reach out to Plaintiff on any additional security measures. Defendants' male maintenance men and vendors continued the unauthorized access into Plaintiff's apartment without authorization and triggering the alarm.

### COUNT TEN
*(Breach of Implied Quiet Enjoyment Pursuant to Florida's)*
*Residential Landlord-Tenant Act*
*(As to all defendants)*

70. Defendants as a landlord, manager and stakeholder has breached its responsibility and duty to deliver quiet enjoyment which caused significant and intensive damages to Plaintiff by the act of filing an erroneous eviction and intentional interference of Plaintiffs premise further compounded by the second threat of eviction breached the contract between Plaintiff and Defendants when the eviction was actual or constructive. As a matter of law, retaliation may occur if a tenant complains to an agency regarding a landlord's management of the property, pursues legal action, or exercises their rights according to Section 83.682 of Florida's landlord-tenant law. However, any form of retaliation, including a sudden increase in rent, an eviction notice, or refusing necessary repairs, is illegal and constitutes a breach of quiet enjoyment.

71. In doing so the Plaintiff was harmed as proximate cause of defendant's actions inflicting emotional and mental injuries warranting actual and consequential damages.

## PRAYER

**WHEREFORE,** Plaintiff prays that the Court:

1.    Grant a judgment in favor of Plaintiff and against Defendants, in so far as law allows for all counts.

2.    Grants Plaintiff any other relief as this Honorable Court may deem just and proper.

3.    Plaintiff request for a trial by jury under Federal Rules and the Middle District of Florida Local Rules, for the Counts so trial able by jury.

4.    Plaintiff request relief for extenuating expense based upon the actions and inactions of the defendants specifically, moving expenses out of the area to another county.

**DATED**. January 11, 2023.

**Respectfully Submitted By:**

CHARMAINE SAUNDERS
311 U.S. Highway 27 S,
Sebring, FL Highlands County
Florida 33870
(863) 738-7920
Plaintiff, *In Pro Per*

## CERTIFICATION OF CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

**Dated:** January 11, 2023.

**BY:**

CHARMAINE SAUNDERS
311 U.S. Highway 27 S,
Sebring, FL Highlands County
Florida 33870
(863) 738-7920
Plaintiff, *In Pro Per*